2022 IL App (4th) 220302

NO. 4-22-0302

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GABE YOUNG and ANNETTA YOUNG, | ) | Appeal from the |
| Plaintiffs-Appellees, | ) | Circuit Court of |
| v. | ) | Carroll County |
| DUSTIN WILKINSON, d/b/a Hammer It Construction, | ) | No. 19L7 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Brinkmeier, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Zenoff concur in the judgment and opinion.

**OPINION**

¶ 1       Plaintiffs Gabe and Annetta Young contracted with defendant Dustin Wilkinson, doing business as Hammer It Construction, to build a residence. The home was built in 2014, but the Youngs asserted that certain items were either not completed or were built in an unworkmanlike manner. This dispute about the quality of the construction led to the initial litigation with the parties in 2015. The Youngs initiated that litigation but voluntarily dismissed their claims before trial. The 2015 litigation went to hearing only on Wilkinson's counterclaim for breach of contract (count I) and mechanic's lien foreclosure (count II) seeking the outstanding balance on the contract. The Youngs prevailed on both of Wilkinson's 2015 claims.

¶ 2       The instant litigation commenced in September 2019, when the Youngs refiled their breach of contract claim. Wilkinson unsuccessfully moved for dismissal of the 2019 complaint on

*res judicata* grounds. Following a bench trial, the trial court found for the Youngs on their breach of contract claim and awarded them $168,223.44 in damages plus court costs.

¶ 3        Wilkinson appeals from the trial court's verdict, arguing that *res judicata* barred the Youngs' 2019 complaint. Alternatively, he seeks a remand to recalculate damages.

¶ 4        We affirm.

¶ 5                                I. BACKGROUND

¶ 6        In March 2014 the Youngs contracted with Wilkinson (and his then-partner, Chad Gallagher) for the construction of a residence in Mt. Carroll, Illinois, to be "completed in a substantial workmanlike manner" for the sum of $253,400. Construction of the residence began in June 2014. In September of that year, the Youngs raised concerns with Wilkinson and Gallagher about the porch settling. By that time, the Youngs had paid all but $10,000 of the contract price. The Youngs met with Wilkinson concerning the construction defects and told him they would not make the final payment until the items were corrected. Wilkinson did not return to the property to address the defects.

¶ 7                              A. The 2015 Complaint

¶ 8        In late 2015 the Youngs filed a breach of contract complaint against Wilkinson and Gallagher, doing business as Hammer It Construction, which alleged, in part, that "despite the obligations created by their Contract" and "despite receiving substantially full payment," Wilkinson failed or refused to fulfill his contractual obligations. They allege that Wilkinson improperly constructed a concrete porch; installed electrical wiring out of compliance with the applicable code; improperly installed light fixture junction boxes, windows, and hot water piping; failed to install a floor drain; failed to install a proper seal around the chimney; refused to complete

the interior work; and improperly constructed foundations/footings for the house and garage. It further alleged Wilkinson failed to perform the work in a workmanlike manner.

¶ 9                                    B. The 2015 Counterclaim

¶ 10        Count I of Wilkinson's 2015 counterclaim alleged breach of contract and alleged that, "although all of the work was performed in a workmanlike manner" and "all contract specifications were met," the Youngs "refused to pay" the final $10,000 on the contract. Count II alleged compliance with the mechanic's lien statute and sought foreclosure of the mechanic's lien to recover the outstanding $10,000 remaining on the contract, as well as interest, costs, and statutory attorney fees.

¶ 11        In March 2019, the Youngs voluntarily dismissed their 2015 complaint. Although the full record from the 2015 case was not provided to this court as part of the record on appeal, the pleadings in the 2019 case reflect that the docket entry of the voluntary dismissal stated as follows:

> "03/19/2019 Attorney Guzzardo present for the Petitioners. Attorney Potter present with the Defendants. Conference held in chambers. Plaintiffs' Motion heard and denie[d]. Plaintiff taking volunt[ary] nonsuit. Previously set date for April 22, 2019 to remain."

This ruling was elaborated on by the trial court in its April 26, 2019, order (the final disposition of 2015 case), wherein the court stated, "Of course, the Youngs' damages claim for money damages was voluntarily dismissed but still could be refiled in a new proceeding."

¶ 12                                    C. Trial of Counterclaims

¶ 13        With the Youngs' 2015 complaint voluntarily dismissed, the 2015 case proceeded to a bench trial on Wilkinson and Gallagher's counterclaims. Because no transcripts were provided

for the first trial, we rely on the facts set forth in the trial court's April 26, 2019, order to glean what took place.

¶ 14        During Wilkinson and Gallagher's case, the testimony revealed that the Youngs met with Wilkinson in October 2014 and informed him they would not pay the final $10,000 until certain defects were rectified. Wilkinson prepared a "punch list" of items needing correction, and the Youngs added further items, including leaking windows, loose support posts, and that the porch was "settling." Wilkinson told the Youngs the porch repairs would need to wait until spring to allow the porch to finish settling. It also came to light that Wilkinson had credited back $5000 to the Youngs for work not performed, leaving the total balance Wilkinson sought in his counterclaim at $5000.

¶ 15        At the close of the contractors' case-in-chief on the counterclaims, a directed verdict was entered against Gallagher without opposition from his counsel.

¶ 16        As part of their defense to the counterclaims, the Youngs presented the testimony of two licensed professional home inspectors and a professional fireplace installer, which the trial court later characterized as "demonstrating, without establishing a measure of damages, that the newly constructed home was plagued with several substantial construction defects in need of expensive remedy." Some of the issues included the settling porch, steps pulling away from the porch, unstable posts, soffits not being cut for lights, a sewer line "clean out" that ran into the middle of the front porch, exposed nail heads on the metal roof, water issues, and an improperly constructed fireplace chimney. There was also testimony that the foundation and footings were improperly constructed and that the electrical box was improperly wired for 100 amps, rather than 200 amps as required by code.

¶ 17        According to the trial court's order:

"Mr. Wilkinson was required to prove substantial performance of his obligations under the contract to construct the Youngs' new home. But given the proof described above, particularly that the attached garage was without proper footings and was not properly attached to the house, the porch was likewise without footings, the "I-joists" had been weakened, and the chimney was such a fire danger that it had to be replaced, it cannot be concluded that Mr. Wilkinson has[ ] met his burden of proving substantial performance to support his counterclaim."

¶ 18    The trial court concluded that the deficiencies were "more than just 'some omissions or deviations from the contract.' " Judgment was entered against Wilkinson and in favor of the Youngs on both counts of the counterclaim; no appeal was taken from that order.

¶ 19                              D. The 2019 Complaint

¶ 20    In September 2019, the Youngs refiled their breach of contract claim against Wilkinson, seeking damages for his failure to substantially comply with the contract. Other than omitting reference to Gallagher, the 2019 complaint was nearly identical to the voluntarily dismissed 2015 complaint. Wilkinson filed a section 2-619(a)(4) motion to dismiss, arguing the 2019 complaint was barred by *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2020). The motion was denied, with the trial court finding "the claim presented by the Youngs for money damages arising from what they assert were construction defects is a separate cause of action from that brought by Wilkinson in his counterclaims and that the Youngs were not required to litigate their claim in the counterclaim proceeding." The trial court further found "[n]or did—or could—the court's ruling on the counterclaim bind the Youngs under the doctrine of *res judicata*. The only issue necessarily litigated in the counterclaim was whether Wilkinson had met his burden of proving that he had substantially performed under the contract."

¶ 21　　　　Wilkinson answered and filed two affirmative defenses, one charging a failure to mitigate damages and the second asserting *res judicata*. For the failure to mitigate defense, Wilkinson asserted:

> "Plaintiffs failed to mitigate their damages, in that, rather than engaging contractors to repair some or all of the alleged defects in construction, *inter alia*, the concrete porch, chimney, and 'otherwise,' they opted or will opt for complete tear out and replacement."

¶ 22　　　　As his second affirmative defense, Wilkinson asserted that "this matter is barred by the doctrine of *res judicata*, for the reason that plaintiffs' claims were at issue in the trial of defendant's counterclaim in case number 2015 L 12."

¶ 23　　　　　　　　　　　　E. Trial on the 2019 Complaint

¶ 24　　　　The 2019 case proceeded to a bench trial in December 2021, with the Youngs presenting testimony and opinions from six witnesses—a fireplace installer, building inspector, home inspector, licensed real estate appraiser, experienced contractor, and licensed electrician—concerning the extent of the work, non-compliance, and repairs necessary, including the cost to correct the defects. One of the Youngs' witnesses, real estate appraiser Thomas Howe, offered opinions on the value of the residence both "as built" and as of October 2020. According to Howe, the residence, as originally built by Wilkinson "was in such a poor workmanlike condition that it was only valued at $34,528." Had the residence been built in a substantially workmanlike manner, its value would have been $275,000; thus, the difference in value equaled $240,472.

¶ 25　　　　Wilkinson testified during his case but offered no other experts or other witnesses. Wilkinson offered his opinion that the porch could have been repaired using shims and that he had advised the Youngs to wait to complete the porch until spring. The Youngs denied the latter

conversation. He also said the porch posts were meant to be decorative, not load-bearing. Wilkinson further testified that he was unaware that some of the foundation "fox blocks" did not contain any concrete—they were supposed to be filled with concrete. As far as the electrical work, Wilkinson testified there were no provisions in the contract to upgrade the electrical service to 200 amps.

¶ 26        In March 2022, the trial court issued its memorandum opinion and order, finding in favor of the Youngs and against Wilkinson and awarding the Youngs damages in the amount of $168,223.44 plus court costs. On liability, the trial court found that the "construction defects were not merely omissions or deviations from the contract but were substantial and material defects and that defendant failed to construct this new residence in a substantial workmanlike manner." It further found that Wilkinson's "defective workmanship led to immediate problems with the new residence and caused most of the damages" claimed by the Youngs. It then concluded that the Youngs were "entitled to be put into the same position that they would have been had the defendant built the residence in a substantial workmanlike manner."

¶ 27        The trial court utilized the cost of repairs methodology to calculate damages because the diminution in value approach resulted in damages that exceeded repair costs. The trial court found the total cost of repairs proven at trial—$168,223.44—was attributable to Wilkinson's "defective construction of the residence" and that, "due to the poor quality of the construction," the porch and garage had to be completely replaced, "thus destroying a fair amount" of Wilkinson's work.

¶ 28        Because Wilkinson had raised his *res judicata* claim as an affirmative defense, the trial court addressed the issue in its memorandum decision, again finding that *res judicata* did not

bar the 2019 complaint for the reasons set forth in the trial court's prior order denying the initial section 2-619(a)(4) motion.

¶ 29    This appeal followed.

¶ 30    II. ANALYSIS

¶ 31    This appeal presents three issues for our review: (1) whether the doctrine of *res judicata* bars the Youngs' 2019 complaint because of the final judgment obtained on Wilkinson's counterclaim filed in the 2015 lawsuit, (2) whether the Youngs' appraisal expert's opinions should have been barred, and (3) whether the evidence at trial was sufficient to support the trial court's damages calculation and its rejection of the mitigation of damages defense. We address these issues in turn.

¶ 32    A. *Res Judicata*

¶ 33    1. *Doctrine of* Res Judicata

¶ 34    The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 16; *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). *Res judicata* bars not only what was *actually* decided in the first action but also those matters that *could have been* decided. *A&R Janitorial*, 2018 IL 123220, ¶ 16. The policies underlying the doctrine are to promote judicial economy and to protect defendants from the burden of having to relitigate essentially the same claim. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21 (citing *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45).

¶ 35    2. *Application of the Elements*

¶ 36        Three requirements must be met for *res judicata* to apply: (1) an identity of parties or their privies, (2) a final judgment on the merits rendered by a court of competent jurisdiction, and (3) an identity of cause of action. *A&R Janitorial*, 2018 IL 123220, ¶ 16. The burden of establishing *res judicata* is upon the party invoking it. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 491 (1993). Whether a claim is barred under the doctrine of *res judicata* is a question of law, which we review *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 37                        a. Identity of Parties

¶ 38        The first requirement for *res judicata*, an identity of parties or their privies, is clearly present in this case. Both the 2015 litigation and the 2019 litigation involved the Youngs and Wilkinson.

¶ 39                        b. Final Judgment

¶ 40        A judgment or order is considered "final" when it terminates the litigation and fixes absolutely the parties' rights, leaving only enforcement of the judgment. *Richter*, 2016 IL 119518, ¶ 24. There is no question that the April 26, 2019, order denying recovery on Wilkinson's counterclaim was a final and appealable order. By the time that order was entered, the entirety of the Youngs' claim had been voluntarily dismissed, and a verdict was directed against Gallagher; the order disposed of all the remaining claims in the 2015 litigation, *i.e.*, Wilkinson's counterclaim. Moreover, no appeal was taken from that order. Accordingly, the April 26, 2019, order entering judgment on Wilkinson's counterclaim for lack of substantial performance was a final judgment on the merits.

¶ 41                        c. Identity of Cause of Action

¶ 42        The third requirement for applying *res judicata* is an "identity of cause of action." Identity of the causes of action may be determined from the record as well as from the pleadings

in both causes. *Pierog v. H.F. Karl Contractors, Inc.*, 39 Ill. App. 3d 1057, 1061 (1976). A cause of action is defined by the facts that give rise to a right to relief. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 10.

¶ 43    In his breach of contract claim, Wilkinson was required to establish (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by the defendant, and (4) resultant injury to the plaintiff. See *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 24. On his mechanic's lien count, Wilkinson was required to establish that (1) the lien claimant had a valid contract (2) with the property owner (3) to furnish labor services or materials and (4) the lien claimant performed pursuant to the contract or had a valid excuse for its nonperformance. *Tefco Construction Co. v. Continental Community Bank & Trust Co.*, 357 Ill. App. 3d 714, 719 (2005).

¶ 44    Although the general rule requires a mechanic's lien claimant to establish full performance of the contract to enforce a lien for the value of the work or services performed, a lien claimant may still enforce a lien by proving substantial performance. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 610 (1999). Substantial performance is " 'honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential elements of the contract.' " *Mani Electrical Contractors v. Kioutas*, 243 Ill. App. 3d 662, 668 (1993) (quoting *Folk v. Central National Bank & Trust Co. of Rockford*, 210 Ill. App. 3d 43, 46-47 (1990)). Indeed, "[a] building contract may be held to be substantially performed, although there may be some omissions or deviations from the contract, or some defects in the material or workmanship, when these are not due to bad faith, do not impair the structure as a whole, [and] are remediable without doing material damage to other parts of the building." *Philip*

*Carey Manufacturing Co. v. Weygandt*, 143 Ill. App. 297, 298 (1908); *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 483 (2010).

¶ 45 In defending against Wilkinson's 2015 counterclaim, the Youngs were not required to prove Wilkinson's noncompliance; it was Wilkinson's burden as the lien claimant to establish substantial performance. *Doornbos*, 403 Ill. App. 3d at 483-84. Regarding the Youngs' 2019 breach of contract claim, they were obligated to meet the same proofs outlined in *Timan*, namely, (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by the defendant, and (4) resultant injury to the plaintiff. *Timan*, 2012 IL App (2d) 100834, ¶ 24.

¶ 46 Under the "transactional test" used by Illinois courts, separate claims are considered the same cause of action if they "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 184 Ill. 2d at 311. " '[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.' " *Hayashi*, 2014 IL 116023, ¶ 46 (quoting *River Park, Inc.*, 184 Ill. 2d at 311). Certainly, the Youngs' 2019 breach of contract claims against Wilkinson arise from the same operative facts as Wilkinson's 2015 lien and contract claims, as both arise from his construction of the Youngs' house. Does this mean that the Youngs were required to have their claims against Wilkinson adjudicated in the 2015 litigation or lose them to *res judicata*?

¶ 47 The answer lies in understanding how Wilkinson's 2015 claims were resolved. Illinois courts have also held that *res judicata* bars a subsequent action only "if successful prosecution of that action would, in effect, nullify the judgment entered in the original action." See *Corcoran-Hakala v. Dowd*, 362 Ill. App. 3d 523, 530-31 (2005); *Blumenthal v. Brewer*, 2016 IL

118781, ¶¶ 42-43. Specifically, *res judicata* bars a subsequent action if "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." Restatement (Second) of Judgments § 22(2)(b) (1982); *Carey v. Neal, Cortina & Associates*, 216 Ill. App. 3d 51, 58 (1991) (describing subsection 22(2)(b) of the Restatement as a " 'common law' rule of compulsory counterclaim"); see also *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92 (2001); *Corcoran-Hakala*, 362 Ill. App. 3d at 530-31.

¶ 48        According to Restatement (Second) of Judgments, section 22:

> "(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
>
> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
>
> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
>
> (b) *The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.*" (Emphasis added.) Restatement (Second) of Judgments § 22 (1982).

¶ 49        Section 22's Comment b points out that a defendant's claim against a plaintiff is not normally merged in the judgment and "issue preclusion does not apply to issues not actually litigated ***. The defendant, in short, is entitled to his day in court on his own claim." *Id.* § 22, cmt. b, at 186; see *Carey*, 216 Ill. App. 3d at 56-57.

"In the interests of allowing a party his 'day in court,' then, the general rule assumes that the defendant in one lawsuit is not barred from suing the plaintiff in another, as long as the claim in issue is not one that must have been joined in the first suit as a counterclaim, either by statute, rule of court, or by those considerations that are expressed in subsection 22(2)(b)." *Carey*, 216 Ill. App. 3d at 57.

¶ 50    Under section 22(b), "[i]f the second suit would result in the nullification of the first judgment, *res judicata* bars the second suit in what may be viewed as a 'common law' rule of compulsory counterclaim." (Emphasis omitted.) *Id.* at 58. *Carey* explained the principle as follows:

"The central question is whether "allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. *** For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. *The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment, *** or by depriving the plaintiff in the first action of property rights vested in him under the first judgment*." (Emphasis omitted and added.) *Id.* at 58-59 (citing Restatement (Second) of Judgments § 22, cmt. f, at 189-90 (1982)).

Since *Carey*, section 22 has been applied or cited with approval by several Illinois courts, including *Agriserve, Inc. v. Belden*, 268 Ill. App. 3d 828, 835 (1994), *Corcoran-Hakala*, 362 Ill. App. 3d at

531, *Kasny v. Coonen & Roth, Ltd.*, 395 Ill. App. 3d 870 (2009), and most recently *Blumenthal*, 2016 IL 118781, ¶¶ 42-43.

¶ 51        In Illinois, counterclaims are generally permissive rather than mandatory. See 735 ILCS 5/2-608(a) (West 2020); *Marsh v. Nellessen*, 235 Ill. App. 3d 998, 1001 (1992). As a general rule, "the defendant retains the choice of bringing a separate action against the plaintiff instead of filing a counterclaim." *Carey*, 216 Ill. App. 3d at 56. Pertinent to the issues here, the Mechanics Lien Act provides that parties "may" litigate other matters between them, does not expressly require them to do so or to file a counterclaim. 770 ILCS 60/9 (West 2020). In other words, counterclaims remain permissive in a mechanic's lien action, not compulsory. The danger in choosing not to bring any permissive counterclaim is that resolution of the earlier litigation may bar the later suit via *res judicata*, but only if the second suit might nullify the results of the first.

¶ 52        Application of the foregoing principles to the instant case is straightforward. The only issue decided in the 2015 litigation was that Wilkinson failed to establish that he substantially performed his obligations under the home construction contract. The judgment in that litigation cannot conceivably be nullified by successful resolution of the Youngs' subsequent 2019 complaint seeking damages for Wilkinson's failure to comply with the contract terms and complete the job in a workmanlike manner. Far from nullifying the outcome of the 2015 case, what the Youngs seek is consistent with it.

¶ 53        Because successful prosecution of the 2019 action could not nullify the judgment entered in the original 2015 action, we conclude that *res judicata* does not apply to bar the subsequent 2019 complaint. If anything, by operation of collateral estoppel, the 2015 judgment should have precluded Wilkinson from relitigating his compliance with the contract. *Herzog v.*

*Lexington Township*, 167 Ill. 2d 288, 294-295 (1995). This argument was, in fact, raised below, but it is now moot because the trial court found against Wilkinson.

¶ 54    Wilkinson's related contention that the Youngs have engaged in "claim splitting" is misplaced. It is true that, where a cause of action is in its nature entire and indivisible, a plaintiff cannot divide it in order to maintain separate lawsuits. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 657 (1989). That is, a plaintiff is not permitted to sue for part of a claim in one action and then sue for the remainder in another action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340 (1996). Instead, a plaintiff must assert all the grounds of recovery he may have against a defendant arising from a single cause of action in one lawsuit. *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 66 (1984); *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890-91 (2009). Simply put, *none* of the Youngs' claims were split. Their claims were brought in the 2015 litigation, voluntarily dismissed without resolution, and then refiled in 2019. The prohibition against claim splitting is not implicated here.

¶ 55    For the reasons outlined above, we affirm the trial court's ruling in favor of the Youngs on the issue of *res judicata*.

¶ 56                    B. Admissibility of Expert Opinions

¶ 57    Wilkinson raises the following issues with respect to the Youngs' expert, Thomas Howe: (1) whether Howe's testimony should be barred due to late disclosure, (2) whether Howe's testimony should be stricken due to a failure in his methodology, and (3) if not, whether Howe's opinion testimony be stricken because he did not utilize industry standard methodology in his appraisal calculations and because his opinions did not assist the trier of fact.

¶ 58    The admissibility of expert testimony is reviewed using an abuse of discretion standard. *People v. Becker*, 239 Ill. 2d 215, 234 (2010); *Gill v. Foster*, 157 Ill. 2d 304, 312-313

(1993). "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 41.

¶ 59 As explained below, we conclude there was no error in the admission of Howe's opinion testimony.

¶ 60                                    1. *Late Disclosure*

¶ 61 Wilkinson argues that Howe's opinion testimony in the 2019 litigation should have been barred because the Youngs failed to timely disclose Howe during the 2015 litigation. The Youngs, in fact, were denied leave to disclose a late expert in the 2015 litigation, which was apparently the reason they voluntarily dismissed those claims. Wilkinson argues that Illinois Supreme Court Rule 219(e) (eff. July 1, 2002) requires that the Youngs should not have been permitted to disclose an expert in 2019 litigation when they failed to timely do so in the 2015 litigation. Rule 219(e) provides, in relevant part, as follows:

> "A party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit. In establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party." Ill. S. Ct. R. 219(e) (eff. July 1, 2002).

¶ 62 Relying on *Freeman v. Crays*, 2018 IL App (2d) 170169, ¶ 49, Wilkinson argues that, "[w]hen a case is refiled, the rule requires the court to consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." (Internal quotation marks omitted.) He further asserts that it is the trial court's duty to "consider

- 16 -

the prior litigation in a refiled action *** regardless of whether there has been a finding of misconduct." *Id.* Wilkinson contends that, in accordance with *Freeman*, the trial court, in making this assessment, must consider the factors set forth in *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067 (2001).

¶ 63 Initially, we note that Wilkinson forfeited the issue because, although he raised it in a pretrial motion to bar Howe, he did not renew the objection when Howe testified. See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502 (1994) (denial of motion *in limine* in a civil case does not preserve the issue for appeal if there is no contemporaneous objection at least the first time the evidence is offered at trial); *Wingo v. Rockford Memorial Hospital*, 292 Ill. App. 3d 896, 904 (1997); *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 333 (2000). Wilkinson did, in fact, object to Howe's opinions concerning the methodology used in his "as built" calculations, but that objection did not extend to any of the Rule 219(e) grounds asserted in the pretrial motion to bar.

¶ 64 Even if we were to consider Wilkinson's Rule 219(e) argument, however, we would reject it. A review of the trial court's August 19, 2021, order denying the motion to bar shows unequivocally that the trial judge thoroughly considered Rule 219(e) and the various factors enunciated in *P.A.C.E.* and provided his rationale for ruling on the motion. Two factors specifically addressed by Wilkinson are the good faith of the Youngs and Wilkinson's timeliness in raising the issue. With respect to the Youngs' good faith, the trial court felt that their failure to disclose an expert in the original action was due to their attorney's mistake "as to the plaintiffs' burden of proof on the issue of damages" and that this was "an honest mistake" and not "intentionally non-compliant or intentionally dilatory." As to Wilkinson's own timeliness in raising the issue, the trial

court was concerned that Wilkinson waited for months before challenging a witness he had known about early in the case.

¶ 65　　　　　The trial court gave appropriate consideration to the factors to be examined under Illinois Supreme Court Rule 219(e) (eff. July 1, 2002). Having done so, we cannot now on appeal reweigh those factors, absent an abuse of discretion. *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1064 (2005). We find no abuse of discretion here.

¶ 66　　　　　　　　　　　2. *Striking Howe's Valuation Opinions*

¶ 67　　　　　Alternatively, Wilkinson argues that Howe's opinions should be stricken because he utilized an improper methodology in conducting his "as built" appraisal and wrongly relied on the Youngs' cost valuations rather than conducting his own independent research. On this point, Wilkinson contends Howe's methodology failed to satisfy the standard for admissibility established in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). He then argues that numerous deficiencies in Howe's testimony go to the admissibility of Howe's testimony, instead of its weight.

¶ 68　　　　　　　　　　a. Summary of Objections Raised at Trial

¶ 69　　　　　During Howe's testimony, Wilkinson was permitted to *voir dire* the witness "as to his method in obtaining the value as built." When counsel completed his *voir dire*, he then moved to exclude Howe's "testimony of the appraisal *** because all he's doing is subtracting numbers that the Youngs gave him and all that does is beg the question." Counsel's objection was overruled, with the trial court finding, "I think those issues that you're raising go to the weight and not the admissibility."

¶ 70          Counsel offered no further objection until the Youngs tendered plaintiffs' exhibits 21 and 23—Howe's appraisal report and his supplemental appraisal report. When asked the basis for his objection to the exhibits, Wilkinson's counsel stated:

> "There is no skill or expertise that went into the as built number. I don't have any problem with the as is number. I'm talking about the as built number and all he really did was subtract and a fifth grader could have done that. It didn't take an appraiser to take the Youngs' numbers and say, okay, I guess these are all exactly correct and to give an opinion based on that and the opinion doesn't include the lay of the land."

Counsel's objections were overruled, with the trial judge again finding that the objection went to "the weight, not the admissibility"—"what weight is given to it."

¶ 71          At the conclusion of trial, each party was permitted to submit additional arguments on Howe's testimony. In the preface to Wilkinson's supplemental authorities, Wilkinson stated:

> "Because the opinions of Plaintiffs' appraisal expert, Thomas F. Howe, were admitted into evidence over objection, it being the courts [*sic*] ruling that any flaws should go to weight rather than admissibility, Defendant's following authorities discussing admissibility should be read as going to giving the testimony no weight."

¶ 72          The trial court, in its memorandum decision, concluded that Wilkinson's objections went to weight rather than admissibility.

¶ 73                              b. Any *Frye* Issue Is Forfeited

¶ 74          Though it was not the basis of his objection to Howe's opinion testimony below, Wilkinson argues on appeal that the testimony fails to satisfy the *Frye* test for admissibility. Commonly called the "general acceptance" test, the *Frye* standard dictates that scientific evidence

is admissible at trial only if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* at 1014. In this context, "general acceptance" does not mean universal acceptance, nor does it require that the methodology be accepted by unanimity, consensus, or even a majority of experts. *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 78 (2002), *abrogated on other grounds*, *In re Commitment of Simons*, 213 Ill. 2d 523, 529-530 (2004). Instead, it is sufficient that the underlying method used to generate an expert's opinion is reasonably relied upon by experts in the relevant field. *Donaldson*, 199 Ill. 2d at 77; *Simons*, 213 Ill. 2d at 530. Significantly, the *Frye* test applies only to "new" or "novel" scientific methodologies. *Donaldson*, 199 Ill. 2d at 78-79; *Simons*, 213 Ill. 2d at 530. Generally speaking, a scientific methodology is considered "new" or "novel" if it is " 'original or striking' " or "does 'not resembl[e] something formerly known or used.' " *Donaldson*, 199 Ill. 2d at 79 (quoting Webster's Third New International Dictionary 1546 (1993)); *Simons*, 213 Ill. 2d at 529-30.

¶ 75        Simply put, Wilkinson never invoked *Frye* by name or in substance in the trial court, a point counsel conceded at oral argument. He never asked the trial court to conduct a *Frye* hearing, nor did he specifically invoke *Frye* as a basis to exclude Howe's testimony. Wilkinson clearly expressed disagreement with the soundness of Howe's methodology, but he never argued that Howe's methodology was "new," "novel," or "not generally accepted." Nor did Wilkinson introduce any such evidence himself. *Frye* applies to opinions "based on new or novel scientific methodology or principle." See Ill. R. Evid. 702 (eff. Jan. 1, 2011). As the proponents of Howe's testimony, the Youngs would have borne the "burden of showing the methodology or scientific principle on which the opinion is based is sufficiently established to have gained general acceptance," but only if Howe's methodology was "new or novel." *Id.* Here, there was no evidence

of the newness or novel nature of Howe's methodology, so the Youngs' obligation to establish its general acceptance was never triggered.

¶ 76          In *Snelson v. Kamm*, 204 Ill. 2d 1, 24-25 (2003), the supreme court held that the failure to request a *Frye* hearing or object to the testimony on that basis resulted in forfeiture of the issue for appellate review. We find that Wilkinson has not properly preserved the *Frye* issue here. It would be patently unfair to now require the Youngs to defend the general acceptance of Howe's methodology per *Frye* when the issue was not raised below.

¶ 77          c. The Remaining Objections Impact Weight, Not Admissibility

¶ 78          Of course, *Frye* is only one aspect of what might limit admissibility of an expert's testimony, and Wilkinson did raise an objection to the soundness of Howe's calculation of the "as built" valuation. However, outside of the *Frye* setting, the admission of expert testimony is a matter of trial court discretion, and we review only for any abuse of that discretion. See *Simons*, 213 Ill. 2d at 530-531.

¶ 79          Specifically, the sole objection raised to Howe's testimony and to the admission of plaintiffs' exhibits 21 and 23 (Howe's appraisal reports) was that of improper methodology. Wilkinson conducted a limited *voir dire* of Howe on the issue and further cross-examined him as to how he arrived at the "as built" valuation.

¶ 80          Like the trial court, we consider the challenge to Howe's methodology to go to the weight of that testimony, not its admissibility. "A person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson v. Gordon*, 221 Ill. 2d 414, 428 (2006) (citing *People v. Miller*, 173 Ill. 2d 167, 186 (1996)). An expert's qualifications by knowledge, skill, experience, training, or education in a field require " 'at least a

modicum of reliability.' " *Turner v. Williams*, 326 Ill. App. 3d 541, 552 (2001) (quoting *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 799 (1999)).

¶ 81    Furthermore, the basis for a witness's opinion generally does not affect his standing as an expert; such matters go only to the weight of the evidence, not its sufficiency. See *National Bank of Monticello v. Doss*, 141 Ill. App. 3d 1065, 1072 (1986). The weight to be assigned to an expert opinion is for the trier of fact to determine in light of the expert's credentials and the factual basis of his opinion. *Treadwell v. Downey*, 209 Ill. App. 3d 999, 1003 (1991). The burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion. *Wilson v. Clark*, 84 Ill. 2d 186, 194 (1981); *Griffin v. Prairie Dog Ltd. Partnership*, 2019 IL App (1st) 173070, ¶ 69. Here, Wilkinson's counsel was given ample opportunity to question Howe's credentials, his experience, and the bases for his opinions.

¶ 82    We find that the trial court properly admitted Howe as an expert witness subject to the foregoing issues affecting the weight to be given to his testimony.

¶ 83                    C. Proof of Damages

¶ 84    Beyond issues of the admissibility of the Youngs' evidence on damages, Wilkinson argues that the evidence admitted was insufficient to support the damages awarded. An award of damages is reviewed under a manifest weight standard, and a trial court's award is against the manifest weight "only if the opposite result is clearly evident." (Internal quotation marks omitted.) *Swigert v. Gillespie*, 2012 IL App (4th) 120043, ¶ 28. In a bench trial, it is for the trial judge to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidentiary record. *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 376 (2004).

¶ 85　　　　　　Wilkinson contends that the trial court's damages award should be reversed, arguing, *inter alia*, that the court (1) utilized an improper methodology in measuring damages, (2) made various errors in calculating cost of repairs damages, namely (a) not specifying how it arrived at the $168,233.44 cost of repairs figure and (b) wrongly awarding cost of repair damages based on Derrer Construction's invoices, (3) did not properly consider the necessity of repairs as to Johnson Heating & Plumbing, (4) failed to consider "comparable sales" for the 'as built" residence, (5) wrongly considered Howe's "cost of repair" methodology used in rendering his "as built" valuation, and (6) erred in rejecting Wilkinson's mitigation of damages defense. We address each contention in turn.

¶ 86　　　　　　　　　　　1. *Method of Calculation of Damages Awarded*

¶ 87　　　　　　It is well settled in Illinois that the measure of damages for a breach of contract when a builder has provided less than full performance or has provided defective performance is generally the cost of correcting the defective condition. *Park v. Sohn*, 89 Ill. 2d 453, 464 (1982); *Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc.*, 288 Ill. App. 3d 1080, 1082 (1997). However, two exceptions exist: (1) when the defects can only be corrected at a cost unreasonably disproportionate to the benefit to the purchaser or (2) when correcting the defects would entail an unreasonable destruction of the builder's work. If either exception applies, then the proper measure of damages is the amount by which the defects have reduced the value of the property. *Park*, 89 Ill. 2d at 464-65; *Wells v. Minor*, 219 Ill. App. 3d 32, 40 (1991).

¶ 88　　　　　　Here, the trial court examined the second exception because the garage and porch had to be completely replaced. Moreover, it made the express finding that this "destruction" was reasonable due to the defective construction. "[D]ue to the poor quality of the construction, the repairs that were required to correct certain aspects of the construction[ ] led to the porch and the

garage having to be completely replaced, thus destroying a fair amount of the defendant's work." For this reason, the trial court applied the cost of repair measure of damages, concluding that "the evidence of damages based upon diminution in value [$240,472.00] exceeds the evidence of damages for the cost of repairs [$168,233.44]" and that the second exception noted in *Arch of Illinois* and *Parks* did not apply. It is "not merely the destruction of the original work that must be considered" but its "*unreasonable* destruction." (Emphasis in original.) *Arch of Illinois*, 288 Ill. App. 3d at 1083. The rule requires the diminution-in-value method only "when correcting the defective work would result not only in discarding the defective work but also in destroying, for example, those portions of a building which were largely free of defects." *Id.*

¶ 89 The trial court concluded that the destruction was not unreasonable and, as a result, the proper measure of damages was cost of repairs. No evidence was presented suggesting that the work correcting the construction defects would involve the "unreasonable destruction" of Wilkinson's initial work. While some of Wilkinson's work was surely replaced—for example the porch and garage—there was no showing that this was not necessary to address the defects. In *McIntyre*, the court observed, "The correction of the defects here will not involve an unreasonable destruction of plaintiff's work as the record reflects that the necessary corrections could only be made if the siding installed by plaintiff was removed." *J-M Builders & Supplies Corp. v. McIntyre*, 56 Ill. App. 3d 714, 716 (1978). The same observation applies here. For these reasons, we find the trial court's conclusion and methodology are supported by the evidence of record.

¶ 90 2. *Amount of the Costs of Repairs*

¶ 91 We now address Wilkinson's numerical challenges to the damages awarded. Here, Wilkinson argues that the trial court (1) failed to specify how it arrived at the $168,233.44 damages

figure and (2) improperly awarded contractor Derrer Construction damages in the amount of $146,523.44, when the invoices submitted by the Youngs totaled only $113,766.28.

¶ 92                    a. Failure to Specify Precise Damages Awarded

¶ 93        Wilkinson first challenges the trial court's failure to list the repairs awarded, claiming that he has no idea how the court reached its conclusion on damages. Yet in its March 2022 memorandum decision, the trial court expressly denoted the dollar amount of each of the contractor invoices offered by the Youngs as plaintiffs' exhibits 14-20 during its rendition of the facts of the case. Then, after determining that the Youngs failed to prove that two of the bills were caused by Wilkinson's defective construction, the court calculated the total cost of repairs by adding the remaining amounts to reach the total of $168,233.44. This amount correlates exactly with plaintiffs' exhibit 22, which listed the total of all bills paid by the Youngs. We find no error in the trial court's failure to list those numbers specifically or separately in its memorandum decision.

¶ 94        b. Discrepancy in Derrer Construction's Invoice Versus Amount Awarded

¶ 95        As to Wilkinson's argument regarding the discrepancy in Derrer Construction's invoices versus the amount awarded, we further decline to disturb the trial court's ruling. While it is true that the invoices submitted for Derrer Construction's work totaled only $113,766.28, Annetta Young testified and documented by way of cancelled checks that she paid Derrer Construction $146,523.44 for the work it performed repairing her residence. She further testified that it was "very possible" the exhibit containing Derrer Construction's invoices was not complete and that an invoice might be missing.

¶ 96        Based on Annetta Young's testimony, we cannot say that an opposite result is clearly apparent on this issue. Simply because there was "some evidence" supporting Wilkinson's

claim—namely, the invoices totaling only $113,766.28 in charges—does not mean that the trial court's finding was against the manifest weight of the evidence. See *Scalise v. Board of Trustees of the Westchester Firemen's Pension Fund*, 264 Ill. App. 3d 1029, 1035 (1993) (finding may not be against manifest weight of evidence even if there is "some evidence" contradicting it). Stated another way, "[i]t will not suffice to show that the record will support a contrary decision; rather, if the record contains any evidence to support the trial court's judgment, the judgment should be affirmed." *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 488 (2004).

¶ 97        As trier of fact, the trial court was entitled to credit Annetta Young's testimony and find it sufficient to establish the amounts paid to Derrer Construction. We do not find the trial court's award to be against the manifest weight of the evidence.

¶ 98                              3. *Necessity of Repairs*

¶ 99        Wilkinson challenges several of the cost of repairs bills based on their necessity, most notably the $5329.23 in plumbing and heating repair bills. Other than the heating and plumbing bill, all repair bills relevant to this appeal were admitted without objection. The Youngs further presented testimony concerning payment of the various bills, which in Illinois constitutes *prima facie* evidence that the bill was reasonable. *Baker v. Hutson*, 333 Ill. App. 3d 486, 493 (2002). There was appropriate testimony from the various contractors about the work they performed. The trial court properly found these latter bills reasonable and necessary, and we conclude that this finding is not against the manifest weight of the evidence.

¶ 100        As to the heating and plumbing bill, Wilkinson objected only as to necessity of the work. The trial court found that the Youngs presented evidence of "defects in the plumbing and heating features of the new residence" and specifically found that the "master bedroom tub pulled

away from the wall when filled with water" and that "the hot water heat that had been installed in the garage floor" did not work properly. The garage, the court found, had to be completely replaced due to the construction defects. Johnson Plumbing & Heating was hired to repair this work.

¶ 101 At trial, Gabe Young discussed the master bedroom tub issues and the garage in-floor heating, and Annetta Young testified that the bills she paid covered the repair work needed to fix the construction defects. Moreover, many of the plumbing and heating defects were outlined by the two home inspectors, Michael Musgrave and Casper Manheim, who inspected the home for construction defects and prepared written reports, which were received into evidence.

¶ 102 Accordingly, the trial court's findings on this point are not against the manifest weight of the evidence.

¶ 103 4. *Comparable Sales for "As Built" Residence*

¶ 104 Wilkinson next contends that Howe failed to conduct a "comparable sales" assessment when he determined the residence's "as built" value. Wilkinson acknowledges that comparable sales were used to determine the value of the residence "as is" or "as repaired" but criticizes the failure to consider comparable sales when valuing the residence when first constructed. However, Howe's calculation of the "as built" value was never challenged on the use of comparable values at trial or in the posttrial supplementation of authorities; therefore, it is forfeited. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002). Wilkinson's sole challenge at trial to the "as built" value was based on Howe's valuation of repair costs, which he subtracted from the initial value, and not on how the initial value was calculated.

¶ 105 5. *Cost of Repairs Methodology in Calculation of "As Built" Valuation*

¶ 106 As an additional argument concerning Howe's "as built" valuation calculation, Wilkinson asserts error in Howe's methodology for determining "cost of repairs," which Howe

then used to calculate the residence's "as built" value. Although we rejected Wilkinson's challenge to the admissibility of Howe's opinion testimony on this point, we now consider those points in the context of the sufficiency of the evidence of damages. Howe testified that he used the actual cost of repair figures provided by the Youngs, adjusted those costs for various price increases, and then subtracted that number from his assessed "as is" or "as repaired" value based on comparable properties to arrive at his "as built" value and, therefore, the diminution in value due to the construction defects. Wilkinson's counsel objected to this method and argued for application of what he called the "breakdown approach," which Howe said was a depreciation method.

¶ 107    Howe went on to discuss why he used his methodology, stating that he conducted his assessment "the way a buyer would look at what it was going to cost them to repair the damage if they wanted to buy that property." He further explained why he adjusted the actual costs of repairs, which was to accommodate the fact the expenses had been incurred in prior years and were not reflective of current prices. Wilkinson's counsel had ample opportunity to develop his points at trial and in a posttrial supplemental memorandum. These points were considered by the trial court, as trier of fact, in its assessment of damages. The trial court's conclusions are not against the manifest weight of the evidence.

¶ 108    We also note that, because the trial court used the cost of repairs measure of damages, the importance of Howe's testimony on diminution of value is greatly diminished. The trial court's conclusion that the destruction of the garage and porch was necessitated by the "poor construction" is the equivalent of concluding the destruction was *not* unreasonable. This finding obviates the need to rely on the diminution in value methodology, and thus, even if were to find some error regarding Howe's valuation testimony, it made no difference to the ultimate outcome

of this case. Moreover, Howe's testimony played no role in the trial court's determination as to the reasonableness of the destruction of the garage and porch.

¶ 109                                    6. *Mitigation of Damages*

¶ 110            Finally, Wilkinson argues that the Youngs failed to properly mitigate their damages. Related to this mitigation, he contends that the trial court erred in awarding certain aspects of damages because no evidence was offered "as to which 'cures,' repairs or rebuilds added value and which weren't worth it, the choice of rebuilding rather than repairing." But Wilkinson bore the burden of proof on the affirmative defense of failure to mitigate, yet he himself offered little evidence on that defense. One who asserts an affirmative defense has the burden of proving it. *Baylor v. Thiess*, 2 Ill. App. 3d 582, 584 (1971); *Capitol Plumbing & Heating Supply, Inc. v. Van's Plumbing & Heating*, 58 Ill. App. 3d 173, 175 (1978). We cannot say that the trial court's decision on that issue is against the manifest weight of the evidence.

¶ 111                                    III. CONCLUSION

¶ 112            For the reasons stated, we affirm the trial court's judgment.

¶ 113            Affirmed.

*Young v. Wilkinson*, 2022 IL App (4th) 220302

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Carroll County, No. 19-L-7; the Hon. Scott Brinkmeier and the Hon. Val Gunnarsson, Judges, presiding. |
| **Attorneys for Appellant:** | Thomas J. Potter, of Ludens & Potter, of Morrison, for appellant. |
| **Attorneys for Appellee:** | John A. Guzzardo, of Ward, Murray, Pace & Johnson, P.C., of Sterling, and Matthew D. Cole, of Ward, Murray, Pace & Johnson, P.C., of Dixon, for appellees. |