NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250650-U

NO. 4-25-0650

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHN LUGO, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Woodford County |
| WOODFORD COUNTY; THE WOODFORD COUNTY | ) | No. 24CH7 |
| SHERIFF'S OFFICE; and ALAN BURTON, in His | ) | |
| Individual Capacity and Official Capacity as Woodford | ) | |
| County Sheriff's Deputy, | ) | Honorable |
| | ) | Mark A. Fellheimer, |
|     Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Doherty and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not err in granting
defendants' motion to dismiss.

¶ 2    Plaintiff, John Lugo, appeals the trial court's dismissal of his complaint against

defendants, Woodford County, the Woodford County Sheriff's Office, and Woodford County

Sheriff's Deputy Alan Burton, pursuant to section 2-619 of the Code of Civil Procedure (735

ILCS 5/2-619 (West 2024)). On appeal, plaintiff argues the court erred because the continuing

wrong exception to *res judicata* applies. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    On February 5, 2023, plaintiff's next-door neighbors, Scott and Alvena Sturm,

hired a tree trimmer to remove branches from plaintiff's trees that were overhanging the Sturms'

property. Plaintiff and the Sturms have "an ongoing and acrimonious relationship," and the tree

trimmer contacted the Woodford County Sheriff's Office before trimming the branches because he anticipated an altercation would occur. Deputy Burton arrived and advised the tree trimmer and Scott that "they could trim any branches that were on the [Sturms'] side of the property line." Scott informed Burton that plaintiff had a pending petition for a no-stalking, no contact order against him. Burton then spoke with plaintiff, who repeatedly refused to grant the tree trimmer permission to enter his property. Plaintiff asked Burton to get the tree trimmer's identification and license to incorporate them into his civil suit, and he said that "he was going to park on public property to watch the tree trimmers."

¶ 5    Burton warned Scott that if he or the tree trimmer "proceeded to go onto [plaintiff's] property without his permission, it would be criminal trespass." Burton then observed plaintiff park his vehicle in front of the Sturms' house. Plaintiff asserted he was located on public property "[t]o watch [his] tree that is going to get cut." Burton reminded plaintiff that he had petitioned for a no-stalking, no-contact order against the Sturms and told plaintiff, "[Y]ou can park up the block or you can watch them from your house." Burton advised plaintiff that "parking on the grass in front of the [Sturms'] house would be provoking a confrontation." Plaintiff eventually moved his vehicle.

¶ 6    After Burton left, plaintiff repeatedly called the Woodford County Sherriff's Office to speak with Burton's supervisors, who were off duty because it was a Sunday. Burton returned to plaintiff's residence and spoke with him again. Burton told plaintiff that he could film from his own property or "anywhere along this road that is not on the embankment directly in front of their house." Plaintiff asked whether Burton would arrest him if he did park in front of the Sturms' house. Burton answered, "If you go back, I am going to arrest you for obstruction. One hundred percent." Plaintiff asserted, "So, you are going to arrest me for obstruction for

parking on public property, that is what you are saying." Burton replied, "For disobeying what I am telling you to do. Yeah. You're provoking a confrontation." Plaintiff insisted Burton was not giving him "a lawful order" and asserted he would take Burton to court based on the day's encounters. Burton reiterated plaintiff was free to video the tree trimmer from his own property or anywhere else on the street except the embankment directly in front of the Sturms' house.

¶ 7          On February 17, 2023, plaintiff filed a federal lawsuit against Burton, Burton's supervisors, Woodford County, and the Woodford County Sheriff's Office. Plaintiff's amended complaint alleged the defendants "violated his 'property rights, due process rights, and civil rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution [(U.S. Const., amends. IV, V, XIV)],' by facilitating trespass onto his property over his repeated objections." Specifically, plaintiff argued (1) Burton "violat[ed] the security and privacy of [plaintiff's] property *** by facilitating unlawful trespass and threatening to arrest [him]," in violation of the fourth amendment of the United States Constitution, (2) the Woodford County Sheriff's Office and Woodford County violated *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and (3) Burton's supervisors failed to train and supervise him properly.

¶ 8          On October 31, 2023, the federal district court granted summary judgment in favor of defendants, finding plaintiff "failed to present facts showing Defendants violated his constitutional rights." Plaintiff appealed, and the Seventh Circuit Court of Appeals affirmed the district court's judgment. The United States Supreme Court denied plaintiff's petition for writ of *certiorari*.

¶ 9          On September 16, 2024, plaintiff filed a complaint in the Woodford County circuit court, raising allegations similar to those contained in his federal complaint. In it, he

sought "declaratory and injunctive relief for violation of his right to utilize a videotape recorder while standing on public property" and "declaratory relief and to enjoin the Woodford County Sheriff's Office from engaging in a repeated pattern of *** abuse of police authority." Defendants Burton, the Woodford County Sheriff's Office, and Woodford County filed a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2024)), alleging plaintiff's complaint arose from the same group of operative facts as his federal claim, which ended in summary judgment being entered against plaintiff, and his arguments were barred by the issue preclusion doctrine of *res judicata*.

¶ 10　　　　　During a hearing on May 13, 2025, defendants argued plaintiff "previously litigated the same allegations against the same defendants in the United States District Court for the Central District of Illinois," where they were granted summary judgment, the Seventh Circuit Court of Appeals affirmed, and the United States Supreme Court denied plaintiff's petition for writ of *certiorari*. Thus, defendants argued, *res judicata* applied because the elements were met, and "*[r]es judicata* bars not only those issues that were actually decided in the prior first suit but also those that could have been decided." Plaintiff agreed that *res judicata* applied, but he argued the "ongoing violation" exception prevented his claim from being dismissed. Plaintiff insisted defendants were "continuing to stop and *** harass Hispanics and African Americans," and he accused defendants of hiding evidence of their conduct. Defendants also argued the only well-pleaded facts contained in plaintiff's complaint were those relating to the events of February 5, 2023, which supported the claims plaintiff raised in federal court. Plaintiff asserted the police misconduct upon which his other claims relied was ongoing, but it was "really hard to get exact facts other than *** Facebook posts." After hearing the parties' arguments, the trial court reserved judgment until the next hearing.

¶ 11        On June 18, 2025, the trial court granted defendants' motion to dismiss. The court found that "basically everything in the complaint" arose from the events of February 5, 2023. The court observed that the complaint contained different counts than those that plaintiff presented to the federal court. However, the court laid out the distinction between claim preclusion, which "prevents the party from suing on a claim that was or could have been raised in a prior lawsuit," and issue preclusion, which "prevents the relitigation of specific issues of facts or law that were actually litigated and necessarily decided in the prior lawsuit." The court emphasized, "[S]eparate claims are considered the same cause of action if they arise from a single group of operative facts, regardless of whether they *** assert distinct theories of relief." The court found *res judicata* applied because all the well-pleaded facts pertained to the incident on February 5, 2023.

¶ 12        The trial court rejected plaintiff's argument that the "continuing or recurrent wrong" exception applied. The court noted plaintiff argued defendants were abusing their police powers and disproportionately targeting and harming minorities in Woodford County, but he did not provide any well-pleaded facts supporting this exception, other than to reiterate the events of February 5, 2023, when an officer said he could not video record from a certain place on public property. According to the court, plaintiff's claims "morphed into a legal argument without any supporting facts as far as what these violations are that disproportionately harm Woodford County's African American and Latino residents." The court found these claims "could have been brought in the first action." The court found the continuing wrong exception did not apply because defendant's "mere conclusions" did not support the conclusion that defendants committed multiple wrongful acts against defendant or other minorities in Woodford County.

¶ 13        This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15          On appeal, plaintiff argues the trial court erred in dismissing his complaint because the continuing wrong exception to *res judicata* applies. We affirm.

¶ 16                                  A. *Res Judicata*

¶ 17          Under the doctrine of *res judicata*, "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 34. "*Res judicata* bars not only what was *actually* decided in the first action but also those matters that *could have been* decided." (Emphases in original.) *Young*, 2022 IL App (4th) 220302, ¶ 34. The party invoking *res judicata* bears the burden of establishing the following: "(1) an identity of parties or their privies, (2) a final judgment on the merits rendered by a court of competent jurisdiction, and (3) an identity of cause of action." *Young*, 2022 IL App (4th) 220302, ¶ 36. We review *de novo* whether a claim is barred by *res judicata*. *Young*, 2022 IL App (4th) 220302, ¶ 36.

¶ 18          Defendants claim *res judicata* bars the claims against them, arguing plaintiff previously filed suit against them in federal court, the federal court rendered a final judgment in that case, and all of plaintiff's claims in both federal and state court "arise from a single group of operative facts as they are all entirely premised upon his two brief encounters with deputy Burton on February 5, 2023 and his allegations that he was harmed by Sheriff's Office policies and procedures." Specifically, defendants argue plaintiff's claims should be viewed as the same cause of action under the transactional test. See *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998) ("[P]ursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group

of operative facts, regardless of whether they assert different theories of relief."). Plaintiff does not argue *res judicata* does not apply. Rather, plaintiff insists the continuing wrong exception prevents his claims from being barred by *res judicata*. We find defendants have established the elements of *res judicata*. See *Young*, 2022 IL App (4th) 220302, ¶ 36.

¶ 19                                   B. Continuing Wrong Exception

¶ 20         After a party establishes the elements of *res judicata*, "the burden shifts to the opposing party to properly plead the existence of an exception to *res judicata*." (Internal quotation marks omitted.) *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 32. Plaintiff argues on appeal, as he did during the proceedings below, that the continuing wrong exception to *res judicata* applies here because his complaint "details a pattern of misconduct spanning multiple years, including traffic stops in December 2023 and November 2024, and a March 2025 incident involving another African American male." Plaintiff is correct in asserting that the bar against claim-splitting is relaxed where "the case involves a continuing or recurrent wrong." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 341 (1996); see *Holmon v. Village of Alorton*, 2016 IL App (5th) 150404, ¶ 21. However, the case before us presents no such continuing or recurrent wrong.

¶ 21         To support his assertion that defendants' alleged wrongdoing continued beyond the events of February 5, 2023, plaintiff's complaint relies on the following: (1) a social media post announcing the Woodford County Sheriff's Office arrested a staffer in the Peoria County State's Attorney's Office for allegedly possessing a stolen firearm, (2) a social media post from the Woodford County Sheriff's Office describing a suspect who was "[w]anted for aggravated fleeing and eluding," (3) two separate Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2024)) responses in which the Woodford County State's Attorney's Office denied

plaintiff's requests for public records related to the aforementioned arrest and the aforementioned suspect, and (4) a FOIA response in which the Woodford County State's Attorney's Office partially denied plaintiff's requests for " 'excessive force complaints, discrimination complaints, criminal misconduct complaints, arrest rate for low level offenses, racial disparities in drug arrest, jail incarceration rate and disparities in deadly force for the years of 2018 thru 04-08-2025.' " None of these exhibits support the conclusion that defendants perpetrated a continuing or recurrent harm against plaintiff. See *Rein*, 172 Ill. 2d at 341. These disparate, unrelated pieces of evidence are irrelevant to plaintiff's argument that the continuing wrong exception to *res judicata* applies here, as the continuing wrong plaintiff attempts to highlight is both speculative—at best—and not impacting him. See *Holmon*, 2016 IL App (5th) 150404, ¶ 21 ("[A] second action is not barred by *res judicata* if *** the case involves a continuing or recurrent wrong." (Internal quotation marks omitted.)). Indeed, the exhibits upon which plaintiff relies lack the slightest connection to the events on February 5, 2023, which supported the well-pleaded facts the federal court considered before it properly granted summary judgment in favor of defendants. See *River Park, Inc.*, 184 Ill. 2d at 311. Plaintiff has failed to show the continuing wrong exception applies, and therefore his complaint is barred by *res judicata*. Accordingly, the trial court did not err in granting defendants' section 2-619 motion to dismiss.

¶ 22 Plaintiff argues his denied FOIA requests "corroborate [his] allegations and support his request for injunctive relief." He is incorrect. The record indicates plaintiff feels wronged by defendants and has used his FOIA requests in an effort to uncover alleged wrongdoing committed by defendants. We refuse to interpret his unsuccessful efforts as proof of a lack of accountability. Rather, we conclude defendant was afforded the opportunity to raise any and all claims related to the events of February 5, 2023, when he filed his initial complaint in

federal court. See *Young*, 2022 IL App (4th) 220302, ¶ 34 ("*Res judicata* bars not only what was *actually* decided in the first action but also those matters that *could have been* decided." (Emphases in original.)). The federal court entered summary judgment against plaintiff, and now plaintiff is attempting to take a second bite of the apple by filing a new complaint in state court. See *River Park, Inc.*, 184 Ill. 2d at 311. Because the doctrine of *res judicata* bars him from doing so and no exception to *res judicata* applies, the trial court did not err in granting defendants' motion to dismiss.

¶ 23          During his address at the Virginia Bar Association's Law Day celebration in 1962, then-attorney general Robert F. Kennedy said, "The glory of justice and the majesty of law are created not just by the Constitution—nor by the courts—nor by the officers of the law—nor by the lawyers—but by the men and women who constitute our society—who are the protectors of the law as they are themselves protected by the law." A civil suit in federal district court, the Seventh Circuit Court of Appeals, and a petition for writ of *certiorari* to the United States Supreme Court. A civil suit in the state circuit court, this appeal to the Fourth District, and probably further. All because some tree branches needed trimming. It is doubtful this is what Kennedy had in mind.

¶ 24                              III. CONCLUSION

¶ 25          For the foregoing reasons, we affirm the trial court's judgment.

¶ 26          Affirmed.