2021 IL App (2d)190865-U
No. 2-19-0865
Order filed November 16, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF NICHOLAS A. KARRIS, Deceased | ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. <br><br> No. 12-P-1125 |
| (Holly S. Karris, Petitioner-Appellant v. Mary Ann Karris and KeyBank National Association, Respondents-Appellees). | ) ) ) ) | Honorable Paul M. Fullerton, Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The law-of-the-case doctrine applied and barred relitigation of whether the removal of the co-trustees and executor of the estate was warranted. Therefore, we affirm.

¶ 2    This appeal stems from a dispute over the trust administration of Nicholas A. Karris Sr.'s estate. Petitioner, Holly S. Karris, appeals the trial court's denial of her petition to remove respondents, Mary Ann Karris and KeyBank National Association (KeyBank), as co-trustees of Nicholas Sr.'s August 7, 1997, declaration of trust (1997 trust). Holly's petition also sought to remove Mary Ann as executor of Nicholas Sr.'s estate. The 1997 trust contained the pour-over remainder of Nicholas Sr.'s estate, which, at the time of his death, included numerous properties and corporate interests believed to be valued in excess of $200 million.

¶ 3    As explained herein, the law-of-the-case doctrine precluded relitigation of the issue of removal. We therefore affirm.

¶ 4                                    I. BACKGROUND

¶ 5    Nicholas Sr. passed away testate on December 1, 2012, and he was survived by his wife, Mary Ann, and their two adult children, Holly and Nicholas P. Karris Jr. Beyond his personal effects, which were left to Mary Ann, his will dictated that the remainder of his estate transfer to the 1997 trust. The 1997 trust created a marital fund for Mary Ann and several subtrusts, including Marital Deduction Trust A, Marital Deduction Trust B, and a residuary trust. The marital deduction trusts were to distribute net income to Mary Ann, with authorization to also distribute principal according to her best interest.  Holly and Nicholas Jr. were remaindermen of the marital deduction trusts.

¶ 6    Nicholas Sr.'s will appointed Mary Ann as sole executor of his estate, and under the terms of the 1997 trust, she was also appointed as a co-trustee. Mary Ann appointed KeyBank as her co-trustee in September 2014.

¶ 7    During Nicholas Sr.'s life, the 1997 trust owned a membership interest in Water Tower Capital Partners LLC. Water Tower Capital Partners LLC owned a 99-year lease located at 679 N. Michigan Avenue, Chicago, IL, which was previously subleased to Apple Inc. (the Apple property). Upon Nicholas Sr.'s death, the interests holding the Apple property were allocated to Marital Deduction Trust A.

¶ 8    On December 26, 2014, KeyBank approved a distribution of the Apple property from Martial Deduction Trust A to Mary Ann. On December 29, 2014, Mary Ann sold the property in equal halves to two new trusts, the Holly S. Karris Gift Trust and the Nicholas P. Karris Gift Trust. Payment by each gift trust was made in the form of approximately $2.1 million in cash and a

promissory note payable to Mary Ann for approximately $19.3 million. Mary Ann assigned her interest in the promissory notes to two additional new trusts created on August 24, 2015, the Holly S. Karris Promissory Note Trust and the Nicholas P. Karris Promissory Note Trust. The distribution, sale, and assignments related to the Apple property are referred to collectively as the "Apple transaction."

¶ 9     Holly petitioned to remove KeyBank as co-trustee on August 28, 2015, and she filed an amended petition for the same on April 13, 2016 (the original removal petition). The original removal petition alleged that Mary Ann had been trying to circumvent Nicholas Sr.'s estate plan, and failing to do so, brought in a "pliant" KeyBank as co-trustee to assist her "new wrongful scheme to re-write the estate plan." In relevant part, she argued that the Apple transaction was not authorized by the 1997 trust and that KeyBank had breached its fiduciary duties, alleging that KeyBank had agreed to allow Mary Ann to misappropriate the Apple property. She alleged other wrongs, including that KeyBank treated Holly differently than Mary Ann regarding discretionary distribution requests, that it favored Nicholas Jr. over her, and that it had failed to timely transfer certain assets from the estate to the 1997 trust. Holly pursued discovery, including document requests, interrogatories, and deposition. In her reply on the matter, she argued that the Apple transaction was contrary to Nicholas Sr.'s intent because in the event of a default on the promissory notes, Mary Ann had the option to foreclose on the Apple property and come to own it personally.

¶ 10    Following an evidentiary hearing, the trial court granted the original removal petition on August 26, 2016. In its order, the trial court agreed with Holly's argument that the Apple transaction directly conflicted with the intent of the 1997 trust and therefore KeyBank breached its fiduciary duty in facilitating the Apple transaction. The trial court explained that Nicholas Sr. had "clearly not contemplated" this type of transaction, and the creation of new trusts in relation

to the Apple transaction deviated from the distribution method he intended. The trial court continued: "Specifically, the fact that Mary Ann would get outright ownership of the Apple property if the promissory notes were to go into default is of concern." However, the trial court did not find any ill intent on the part of KeyBank toward Holly. It reserved the issue of undoing any trusts until a new co-trustee would be appointed.

¶ 11   Respondents moved to reconsider on September 23, 2016, arguing that the trial court made a mistake of fact because Mary Ann would not receive outright ownership of the Apple property in the event of a default. Rather, the promissory notes were assigned to the promissory note trusts, and in the event of a default, ownership would go to those trusts. A few days later, Mary Ann filed a petition to reform the promissory note trusts and gift trusts, seeking to address the trial court's concerns about deviations from the 1997 trust provisions.

¶ 12   On December 12, 2016, the trial court granted respondents' motion to reconsider. It explained that it had misunderstood the effect of a default on the promissory notes, mistakenly believing that Mary Ann would receive ownership of the Apple property in the event of a default. It understood now that the promissory note trusts owned the notes. It further explained that aside from the mistaken issue of a default providing Mary Ann ownership of the notes, no other issue required removal of a co-trustee. The trial court concluded that it had erred in its discretionary decision to remove KeyBank as co-trustee because Holly had failed to show bad faith, dishonesty, or fraud on the part of KeyBank. Finally, it commented that the promissory note trusts and gift trusts needed to be amended or reformed to comply with Nicholas Sr.'s donative intent. Mary Ann filed an amended petition to reform those trusts later that month.

¶ 13   Holly filed a notice of appeal on January 11, 2017, for the trial court's August and December 2016 orders. On March 24, 2017, she moved to voluntarily dismiss the appeal, and we

granted her motion on March 29, 2017. Meanwhile, in the trial court, Holly petitioned to appoint a special administrator on March 1, 2017. Therein, she argued that Mary Ann and KeyBank had "irrefutable conflicts" as a result of the trial court's August and December 2016 orders, and therefore, as a matter of law, the trial court had to appoint a third-party special administrator until such time as the conflicts of interest were resolved.

¶ 14    In October 2018, Holly responded to Mary Ann's amended petition to reform the trusts, and she combined her response with a motion to strike and dismiss the amended petition.

¶ 15    On February 6, 2019, the trial court denied Mary Ann's amended petition to reform the trusts and granted Holly's motion to strike and dismiss. The trial court explained that "the bottom line is that the distribution of the Apple property to Maryann [*sic*] was improper." The trial court believed that the primary reason the Apple transaction was done was for tax and savings purposes, but the transaction did not comply with section 9.2 of the 1997 trust. The trial court had listed all the problems it believed existed with the transaction in its August 2016 order. Citing its December 2016 order, the trial court explained that its reinstatement of KeyBank as a co-trustee was not a "blessing" of the Apple transaction. Rather, its December 2016 order had continued to note the problems with the Apple transaction. The trial court stated that the Apple transaction was "flawed from the get-go," and reiterated that it violated the terms of the 1997 trust and Nicholas Sr.'s donative intent.

¶ 16    Following the denial of Mary Ann's amended petition to reform, Holly petitioned on March 25, 2019, to remove Mary Ann and KeyBank from their roles as co-trustees and Mary Ann as her role as executor of the estate (the second removal petition). Therein, she argued that Mary Ann and KeyBank were in "such a conflicted position" regarding the trust that they must be removed as a matter of law and that they had been in their conflicted position "from inception of their

trusteeship." She continued that, in light of the trial court's February 2019 order, the need for removal was "written in neon." Holly relied on the February 2019 order, arguing that the trial court's determination that the Apple transaction was "flawed from the get-go" created a claim against Mary Ann and KeyBank to fully restore the trust estate to its position prior to the Apple transaction. She argued that this created an "impossible conflict" in that, on the one hand, Mary Ann and KeyBank would want to maximize the value of the 1997 trust, while on the other hand, they would want to minimize their own costs and liabilities arising out of their breach of fiduciary duty. Holly then provided a list of 21 "largely supplemental and 'piling on' in nature" allegations that respondents breached their fiduciary duties, including various allegations related to the Apple transaction. Holly argued that removal was required regardless of "good faith or bad faith" on the part of Mary Ann and KeyBank, and regardless of what an evidentiary hearing might reveal. Holly did not request additional discovery.

¶ 17    The trial court denied Holly's second removal petition on June 13, 2019. The trial court addressed Holly's argument that the Apple transaction now put the co-trustees in an "impossibly conflicted position." While the trial court acknowledged that it had previously found that the Apple transaction violated the 1997 trust, it also had previously found no ill intent on behalf of the co-trustees. As to respondents' potential liabilities arising out of a breach of fiduciary duty, the trial court cited to provisions of the 1997 trust shielding trustees from liability for loss, damage, or expense to the trust, so long as they acted in good faith. The 1997 trust provided that trustees could only be liable for gross negligence or willful wrongdoing. The trial court disagreed with Holly's argument that this case presented evidence of self-dealing, direct conflicts, fraud, or dishonesty. Rather, it believed that both Mary Ann and KeyBank acted in good faith in executing the Apple transaction. Having denied the second removal petition, the trial court noted that the parties were

still left with the need to unwind the Apple transaction. The trial court ordered respondents to take appropriate steps necessary to unwind the Apple transaction.

¶ 18    Holly moved to vacate and reconsider the trial court's order, arguing "newly discovered evidence," including documents drafted by respondents' attorneys as part of an effort to unwind the Apple transaction. Holly argued that the plan would incur some amount of cost to the trust beneficiaries. Respondents' document stated that it was in response to the trial court's order and that respondents sought to unwind the Apple transaction as if it had never happened. Other evidence included a proposed cancellation and revocation for the promissory notes and an allegation that proposed amended tax returns may now be beyond the period to amend.

¶ 19    Following a hearing on September 5, 2019, the trial court denied Holly's motion to vacate and reconsider. In part, it disagreed that there was newly discovered evidence in this case. The trial court reiterated that it was not going to remove the trustees but that the Apple transaction needed to unwind.

¶ 20    On October 4, 2019, Holly filed a notice of appeal for the trial court's June and September 2019 orders.

¶ 21                        II. ANALYSIS

¶ 22    We first address respondents' argument that we lack jurisdiction of this appeal. They contend that Holly's appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016) is untimely. They argue that her appeal is grounded in her disagreement with the trial court that the Apple transaction warranted removal of the co-trustees. Respondents contend that Holly has taken the position since 2016 that they were conflicted in their roles as co-trustees, arguing in her original removal petition that the Apple transaction was improper and that KeyBank breached its fiduciary duties in acting outside Karris Sr.'s intent. They argue that the trial court did not make

any additional findings or orders that would vest jurisdiction to revisit the same issue on this appeal.

¶ 23   Respondents contend that Holly has mischaracterized the trial court's February 2019 order as a novel or independent basis for removal. They stress that the February 2019 order simply ruled on their amended petition to reform the gift and promissory note trusts. They argue that the trial court's comments on the Apple transaction, including that it was "flawed from the get-go," were recitations of its findings from its August and December 2016 orders.

¶ 24   Respondents conclude that Holly's claim that they were conflicted arose when the Apple transaction was first found improper in 2016 and thus had to be appealed in the January 2017 appeal. Respondents argue that an appeal pursuant to Rule 304(b)(1) must be appealed within 30 days of entry, with a central reason being the need for certainty during lengthy estate administrations.  See *In re Estate of Kime*, 95 Ill. App. 3d 262, 268 (1981). They argue that the need for certainty strongly supports dismissal of this appeal.

¶ 25   Holly responds that her January 2017 appeal did not create a jurisdictional impediment. She argues that she had the right to dismiss her prior appeal. Further, she argues that her original removal petition did not raise the issue of the Apple transaction creating an impossible conflict for the co-trustees, and her petition was directed at only KeyBank, not Mary Ann. She claims that the "facts were not the same in 2016 as in 2019," and she stresses that the February 2019 order put respondents in an impossibly conflicted position.

¶ 26   As we explain below, we have jurisdiction over respondents. However, we conclude that the issue raised by Holly on this appeal is the same as she was required to bring on her January 2017 appeal, and therefore the law-of-the-case doctrine precludes revisiting the trial court's ruling that the Apple transaction did not warrant the removal of a co-trustee. Because the issue on appeal

is precluded by the law-of-the-case doctrine, we also deny Holly's open motion to cite additional authority, as the additional authority is unnecessary to our disposition.

¶ 27     Holly appeals pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which provides for appeals from "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." The relevant committee comments on Rule 304 provide that subparagraph (b)(1) "applies to orders that are final in character although entered in comprehensive proceedings that include other matters," with examples including appointing or removing an executor. Ill. S. Ct. R. 304(b)(1), Committee Comments (rev. Sept 1988). Consistent with these comments and case law, an order denying a petition to remove an executor of an estate and co-trustees of the estate's trust is final and immediately appealable under Rule 304(b). See *In re Estate of Russell*, 372 Ill. App. 3d 591, 593 (2007) (removal of a trustee was analogous to the change of an estate's executor for purposes of creating an appealable order under Rule 304(b)(1)); see also *In re Neuf's Estate*, 85 Ill. App. 3d 468, 469 (1980) ("[A]n order granting or denying removal of a conservator should be regarded as a final determination of a right or status within the meaning of Rule 304(b)(1).").

¶ 28     Importantly, Rule 304(b)(1) requires an immediate appeal. See Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016) (the time to file an appeal under Rule 304(b) is provided by Rule 303). Appeals pursuant to Rule 304(b)(1) are mandatory: when an order falls within the scope of the rule, it must be appealed within 30 days of entry. *In re Estate of Devey*, 239 Ill. App. 3d 630, 633 (1993). The mandatory nature of a Rule 304(b)(1) appeal "promotes efficiency and provides certainty *** during the lengthy procedure of estate administration." *Id.* Certainty is a necessity in lengthy estate administrations. *In re Estate of Kime*, 95 Ill. App. 3d 262, 268 (1981). Without the mandatory nature of such appeals, a party could wait to appeal the denial of a petition to remove an executor

until years later and, if successful, effectively begin again the entire estate administration. *Id.* Thus, when an order is appealable under Rule 304(b), any claim of error is lost if not raised immediately. *Washington Mutual Bank, F.A. v. Archer Bank*, 385 Ill. App. 3d 427, 430 (2008).

¶ 29    Furthermore, the failure to timely appeal an order under Rule 304(b) renders that order the law of the case. See *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 547 (1997) (failure to immediately appeal summary judgment after a Rule 304(a) finding rendered the judgment the law of the case); see also *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 615 (1992) (failure to timely appeal an order under Rule 307 rendered the order the law of the case). Generally, the law-of-the-case doctrine prohibits reconsideration of an issue decided on prior appeal. *In re Christopher K.*, 217 Ill. 2d 348, 363 (2005). If there have been no material changes in the facts since the prior appeal, the trial court may not relitigate the issue and the appellate court may not reexamine the issue on a second appeal. *Id.* at 363. The doctrine is not a jurisdictional limitation but rather a recognition that courts generally decline to reopen what has been decided. *Id.*

¶ 30    The purpose of the law-of-the-case doctrine is to avoid indefinite relitigation of the same issues, obtain consistent results, and ensure that lower courts follow decisions of appellate courts. *Id.* Like other preclusion doctrines such as collateral estoppel, the law-of-the-case doctrine prevents a litigant from taking two bites of the same apple. *Diocese of Quincy v. Episcopal Church*, 2016 IL App (4th) 150193, ¶ 28. Two exceptions to the law-of-the-case doctrine exist: (1) when a higher reviewing court makes a ruling contrary to the original reviewing court's decision on the same issue; and (2) when a reviewing court finds that its prior decision was palpably erroneous. *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 17.

¶ 31    Here, the trial court granted Holly's original removal petition to remove KeyBank based on the Apple transaction, but it reconsidered the removal in its December 2016 order because it

had made a mistake of fact. Those orders were immediately appealable under Rule 304(b)(1), as they were orders granting removal of a co-trustee and reconsidering the removal, and Holly's January 2017 appeal from these orders was timely. However, Holly voluntarily dismissed her appeal several months later.

¶ 32    Almost a year and a half after Holly voluntarily dismissed her January 2017 appeal, she moved to dismiss or strike Mary Ann's petition to reform the gift and promissory note trusts. In its February 2019 order, the trial court denied Mary Ann's amended motion to reform the trusts, and it reiterated that the Apple transaction was improper. It stated that it had listed all the problems with the Apple transaction back in its August 2016 order, and it explained that its reinstatement of KeyBank as a co-trustee had not been an endorsement of the Apple transaction itself.

¶ 33    Relying on the February 2019 order, Holly once again sought removal of KeyBank as co-trustee, and she also sought removal of Mary Ann as co-trustee and executor. Unlike in her original removal petition, Holly did not allege removal based on bad faith, but instead argued that both parties should be removed as a matter of law regardless of their intent. When the trial court denied her second removal petition, Holly noticed this appeal pursuant to Rule 304(b)(1). Holly's instant appeal is timely and proper under Rule 304(b)(1), as it immediately sought review of the trial court's denial of her second removal petition.

¶ 34    However, the issue that Holly presents before this court is the same issue that was ripe for appeal in January 2017: whether the Apple transaction warranted removal of a co-trustee. Contrary to Holly's position, the trial court's February 2019 order did not support a novel claim for the removal of the co-trustees. The trial court's language in its February 2019 order—such as calling the Apple transaction "flawed from the get-go"—was consistent with an understandable frustration that the same issue had persisted for years. Its language cannot be construed as establishing a novel

basis for removal. In fact, the trial court cited its own August and December 2016 orders as the reasons why the Apple transaction remained problematic. Quite simply, the trial court had already determined that the Apple transaction was improper in 2016, and it did nothing more than reiterate its position in the February 2019 order.

¶ 35    Aside from the February 2019 order, Holly's second removal petition was grounded in the Apple transaction and the language of the 1997 trust. While her petition for removal listed an additional 21 allegations of breach of fiduciary duty, she explicitly characterized those as "largely supplemental" and "piling on." Moreover, the supplemental allegations chiefly related to the Apple transaction, confirming that she was, in fact, piling on her criticism of the Apple transaction itself.

¶ 36    On Holly's motion to reconsider the trial court's order denying her second removal petition, she cited "newly discovered evidence" consisting primarily of documents prepared by respondents to comply with the trial court's directive to unwind the Apple transaction. Again, the trial court had already determined that the Apple transaction was improper. Aside from providing tacit cumulative evidence that the Apple transaction was wrong, it is unclear how these new documents supported respondents' removal as co-trustees. After all, Holly had been decrying the Apple transaction for years, and respondents' attempt to unwind the Apple transaction was at the direction of the trial court.

¶ 37    Thus, we conclude that Holly's appeal is an attempt to take a second bite of the same Apple transaction. The trial court had already determined in December 2016 that the Apple transaction was improper but did not warrant removal of a co-trustee. Holly appealed from the denial of her original removal petition in January 2017 but chose to dismiss that appeal. Her second removal petition did not present new evidence of wrongdoing but instead relied upon the same Apple transaction and the set terms of the 1997 trust. We note that, during the pendency of her January

2017 appeal, Holly moved in the trial court to replace respondents with a special administrator, arguing that respondents had an "irrefutable conflict" stemming from the trial court's August and December 2016 orders. Holly therefore strains credulity in arguing that a new "impossible conflict" existed only after the February 2019 order. Whether irrefutable or impossible, the core conflict clearly predated the February 2019 order.

¶ 38    We also reject Holly's argument that the original removal petition did not present the same issue because it was not directed at Mary Ann. While Holly had not sought to remove Mary Ann in her original removal petition, she had the opportunity to do so, and the original removal petition alleged that KeyBank agreed to aid Mary Ann in her "wrongful scheme" to rewrite the 1997 trust. Moreover, Holly's second removal petition sought Mary Ann's removal regardless of intent, obviating the need to find whether Mary Ann acted in bad faith. Holly's second removal petition even argued that respondents' conflict had existed "from inception of their trusteeship," recognizing that her claim for removal had been available before her January 2017 appeal.

¶ 39    Finally, neither exception to the law-of-the-case doctrine applies. There is no contrary higher court ruling, and because Holly did not prosecute her January 2017 appeal, we have no prior ruling we could find palpably erroneous.

¶ 40    Our holding is mindful that Holly's repeated petitions for removal have created administrative uncertainty and protracted relitigation, which is why Rule304(b)(1) requires an immediate appeal, and, absent an immediate appeal, the law-of-the-case doctrine precludes relitigation. This appeal presents only the form of a new issue, when in substance it is a renewed argument over the same operative facts. Accordingly, the law-of-the-case doctrine precludes Holly from relitigating Mary Ann and KeyBank's removal based on the Apple transaction.

¶ 41                                    III. CONCLUSION

¶ 42    Holly's open motion to cite additional authority is denied. The judgment of the Du Page

County circuit court is affirmed.

¶ 43    Affirmed.