2024 IL App (1st) 231471-U
Order filed: August 15, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-1471

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| HOLLY SOFIA KARRIS, individually and as parent and next friend of Zoe Karris Koch, a minor, and Yannick Karris Koch, a minor, and as representative of the August 7, 1997 Nicholas A. Karris Declaration Of Trust, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| | ) | No. 2019 L 013888 |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| KEYBANK NATIONAL ASSOCIATION, MARY ANN KARRIS and NICK KARRIS, JR., | ) ) ) | Honorable Thomas Donnelly, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reversed the dismissal of plaintiff's third amended complaint on *res judicata* grounds and remanded for further proceedings.

¶ 2    Plaintiff, Holly Sofia Karris, individually and as parent and next friend of Zoe Karris Koch, a minor, and Yannick Karris Koch, a minor, and as representative of the August 7, 1997, Nicholas A. Karris Declaration of Trust, filed an 11-count, third amended complaint in the circuit court of

Cook County against defendants KeyBank National Association (KeyBank), Mary Ann Karris, and Nick Karris, Jr. The counts alleged breach of trust, breach of fiduciary duty, fraud, conversion, and tortious interference with an inheritance expectancy. The Cook County circuit court granted defendants' motion to dismiss the third amended complaint pursuant to section 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4) (West 2022)) on *res judicata* grounds because the claims asserted by plaintiff already had been litigated to final judgments in the DuPage County circuit court. Plaintiff appeals the dismissal order. We reverse and remand.

¶ 3    Nicholas A. Karris, Sr. (Karris Sr.), a resident of DuPage County, died on December 1, 2012, and was survived by his wife, Mary Ann Karris (Mary Ann), and two adult children, Nicholas Karris, Jr. (Nick) and Holly Karris (Holly). Karris Sr.'s last will appointed Mary Ann as the sole executor of his estate and left his estate to the Nicholas A. Karris Trust dated August 7, 1997 (1997 Trust). Mary Ann and KeyBank are co-trustees of the 1997 Trust, which is administered from offices located in Chicago. The 1997 Trust created sub-trusts: Marital Trust A, Marital Trust B, and two residuary trusts. Mary Ann is the beneficiary of the marital trusts; Holly and Nick are the remainder beneficiaries. Mary Ann, Holly, and Nick are the beneficiaries of the residuary trusts.

¶ 4    The marital trusts provide for mandatory net income distributions to Mary Ann, while the residuary trusts provide for income and principal distributions pursuant to a "best interests" standard. The size of the estate is vast. At the beginning of 2016, the estate consisted of over 30 commercial and residential properties, over 30 different limited liability corporations and was valued in excess of $300 million.

¶ 5    During Karris Sr.'s life, the 1997 Trust owned membership interests in Water Tower Capital Partners LLC (WTCP), which, in turn, owned a 99-year ground lease under a commercial

property located at 679 North Michigan Avenue in Chicago. We refer to this commercial property as the Apple property because 679 North Michigan Avenue was under lease to Apple, Inc. for its flagship retail store. The Apple property made up over 99% of Marital Trust A and was appraised at $42 million in 2014.

¶ 6       On December 26, 2014, KeyBank transferred the Apple property from Marital Trust A to Mary Ann. On December 29, 2014, Mary Ann sold the Apple property in equal halves to two new trusts, the Holly S. Karris Gift Trust and the Nicholas P. Karris Gift Trust, for $2,145,000 in cash and a $19,300,00 promissory note from each trust. Mary Ann subsequently assigned her interest in the promissory notes to two additional trusts created in August 2015: the Holly S. Karris Promissory Note Trust and the Nicholas P. Karris Promissory Note Trust. According to Holly, the transfer of the Apple property to Mary Ann and the subsequent creation of the four new trusts were not contemplated by Karris Sr. in either his will or the 1997 Trust.

¶ 7       On April 13, 2016, Holly filed an amended petition in the circuit court of DuPage County to remove KeyBank as co-trustee of the 1997 Trust for violating its fiduciary duties and acting in opposition to Karris Sr.'s intent. Specifically, Holly complained that KeyBank breached its fiduciary duties as co-trustee by: failing to timely transfer assets from Karris Sr.'s estate to the 1997 Trust; treating Holly differently from Mary Ann with respect to discretionary distributions from the residuary trusts; proposing a "sham" sale of certain properties; transferring the Apple property to Mary Ann and creating the four new trusts; and relinquishing control of major decisions related to estate properties to Nick and failing to provide information about the estate to Holly.

¶ 8       Following an evidentiary hearing, the DuPage County circuit court issued a written decision on August 26, 2016. First, the court found that KeyBank did not breach any fiduciary

duties by taking 18 months to transfer assets from Karris Sr.'s estate to the 1997 trust. The court stated:

> "Here, it is clear, and both parties acknowledge, that the estate of Mr. Karris is extensive and complex. KeyBank was appointed in September of 2014 and it was at that time *** required to ascertain the terms of the trust and what properties could potentially be involved in the transfer. Absent any real evidence that KeyBank was acting improperly or not in good faith, and given this estate's size and complexity, the court finds that 18 months is not an unreasonable amount of time to make such examinations and perform its due diligence."

¶ 9 Second, the court found that Holly was not treated unfairly with respect to discretionary distributions. The court stated: "Here, there has not been sufficient evidence to prove that KeyBank committed fraud, abuse of discretion, or bad faith when making these distributions and the court finds no breach of duty on the part of KeyBank regarding this matter."

¶ 10 Third, the court found that KeyBank did not engage in a sham sale of properties, stating:

> "Although Holly claims she will be harmed by the sale of [certain assets] and is being treated unfairly, the court is not so convinced. *** [T]he actions taken by KeyBank are clearly manifested in the 1997 Trust, particularly in sections 10.1(a), 10.1(b), 10.1(c), and 10.1(g). All these sections allow the trustee to manage the properties in a way to maximize their value with the intent to benefit the beneficiaries. KeyBank has a duty to maximize the value of the properties and KeyBank feels the procedure it has laid out does just this. It is within KeyBank's discretion as co-trustee to sell and manage the properties as it sees fit and the court will not substitute that discretion absent some form of malfeasance."

¶ 11    Fourth, the court found that KeyBank did not fail to provide information about the estate to Holly, stating:

> "Holly has received financial information regarding the trust, including an annual accounting and monthly statements, even on trusts which she has no present right to receive income. *** As to the allegations of failing to provide information to Holly, the court finds that there was no breach of fiduciary duty committed by KeyBank."

¶ 12    The court further found that Nick's management of the estate properties was proper:

> "It is clear that [Nick] worked extremely close with his father in running and managing the Karris properties and holds an MBA from the University of Chicago. The fact that [Nick] worked with his father for over 10 years and went to graduate school to presumably continue to help his father, shows Mr. Karris would have no objection, and it indeed appears to be his intent, that his son continue to manage the properties. *** There has been no convincing evidence that [Nick] has been mismanaging the properties (in fact, quite the contrary) and the appointment of [Nick] to manage the properties is within the confines of the trust document."

¶ 13    Fifth, with respect to the transfer of the Apple property to Mary Ann (the Apple transaction) and the subsequent creation of four new trusts (the Apple trusts), the court stated:

> "The court finds the Apple [t]ransaction to be the most troubling of the issues brought before the court requesting removal of KeyBank. After carefully examining the Will, the 1997 Trust, and the Apple [t]rusts, the court finds these newly created Apple [t]rusts were clearly not contemplated by Mr. Karris when forming his estate plan and the creation of these trusts changed the distribution method Mr. Karris intended. Specifically, the fact that Mary Ann would get outright ownership of the Apple [p]roperty if the

promissory notes were to go into default is of concern. *** Thus, the court finds KeyBank breached its fiduciary duty as to the Apple [t]ransaction by acting outside the intent of Mr. Karris."

¶ 14 Based on KeyBank's breach of fiduciary duty with respect to the Apple transaction, the court granted Holly's amended petition to remove KeyBank as co-trustee of the 1997 Trust.

¶ 15 KeyBank and Mary Ann brought motions to reconsider, arguing that the court made a mistake of fact because Mary Ann would not receive outright ownership of the Apple property in the event of a default on the promissory notes. Rather, the promissory notes were assigned to the promissory note trusts, and in the event of a default, ownership would go to those trusts.

¶ 16 On December 12, 2016, the court granted the motions to reconsider, explaining that it had misunderstood the effect of a default on the promissory notes and mistakenly believed that Mary Ann would receive ownership of the Apple property in the event of a default. The court concluded that it had erred in its discretionary decision to remove KeyBank as co-trustee because Holly had failed to show any fraud, self-dealing, dishonesty or bad faith on the part of KeyBank.

¶ 17 Holly filed a notice of appeal on January 11, 2017, from the December 2016 order. On March 24, 2017, Holly moved to voluntarily dismiss the appeal, and the Second District appellate court granted her motion on March 29, 2017.

¶ 18 Meanwhile, on March 1, 2017, Holly filed a petition in the DuPage County circuit court for a citation to discover and recover assets against Mary Ann, KeyBank, and Nick (defendants). Holly asked the court to require defendants to produce a representative "to be examined regarding documents and information in [defendants'] possession and control that are necessary to determine the full extent of the [defendants'] liability for engaging in and actively participating in the illegal and void Apple [t]ransaction, and to determine all other improper distributions from the trust estate

of [Karris Sr.] in violation of the express terms of his [w]ill and the [1997 Trust]." Holly also requested that "this Citation determine title of property improperly concealed, converted, or embezzled assets belonging to the trust estate of [Karris Sr.], currently in possession, ownership or control of [defendants] or other third parties." Holly also sought to "restore [Karris Sr.'s] estate and 1997 Trust with the Apple [i]nterest, as well as any other assets, funds, and property determined to be improperly concealed, converted, or embezzled, which are currently in the possession, ownership or control of the [defendants] or other third parties." On October 10, 2017, the court denied Holly's petition for a citation, finding that the petition was "premature."

¶ 19    Mary Ann also filed an amended petition in the DuPage County circuit court to reform the promissory note trusts and gift trusts to allow for the Apple transaction. On February 6, 2019, the court denied Mary Ann's amended petition to reform the trusts and granted Holly's motion to strike and dismiss the amended petition. The court stated that the primary reason the Apple transaction was done was for tax and saving purposes, but the transaction did not comply with section 9.2 of the 1997 Trust, and "the bottom line is that the distribution of the Apple property to [Mary Ann] was improper." The court further stated that the Apple transaction was "flawed from the get-go," and reiterated that it violated the terms of the 1997 Trust and Karris Sr.'s donative intent.

¶ 20    Following the denial of Mary Ann's amended petition to reform the promissory note trusts and gift trusts, Holly filed a second petition in the DuPage County circuit court seeking the removal of Mary Ann and KeyBank from their roles as co-trustees. Holly argued that Mary Ann and KeyBank were in such "a conflicted position vis -a-vis the [1997 Trust] and the beneficiaries that Illinois law requires their removal." Holly relied on the February 2019 order, arguing that the circuit court's determination that the Apple transaction was "flawed from the get-go" created a

claim against Mary Ann and KeyBank to fully restore the trust estate to its position prior to the Apple transaction. Holly argued that this created an "impossible conflict" because, on the one hand, Mary Ann and KeyBank would want to maximize the value of the 1997 Trust, but on the other hand, they also would want to minimize their own costs and liabilities arising out of their breach of fiduciary duty. Holly further provided a list of 21 supplemental allegations of breaches of fiduciary duties committed by Mary Ann and KeyBank, "any one of which adds to [their] conflicting dual loyalties." Several of these "supplemental" allegations merely repeated the claims that Mary Ann and KeyBank breached their fiduciary duties by approving the transfer of the Apple property to Mary Ann.

¶ 21    The court denied Holly's second removal petition on June 13, 2019. The court noted its previous finding that the Apple transaction violated the terms of the 1997 Trust, but it also stated that Mary Ann and KeyBank had not acted in bad faith or with any ill intent and thus they were not in conflict with the estate or with the other beneficiaries such that they should be removed as co-trustees.

¶ 22    Holly moved to vacate and reconsider the order denying her second removal petition. On September 5, 2019, the court entered a written order denying the motion to vacate and reconsider, but stating that the "ruling is without prejudice to Holly Karris's right to pursue damages as a result of the Apple [t]ransaction or the unwinding thereof."

¶ 23    Holly appealed the June and September orders denying her second removal petition and denying her motion to vacate and reconsider. Mary Ann and KeyBank moved to dismiss the appeal on the basis that the September 5 order was not a final judgment. The Second District appellate court (appellate court) denied the motion on January 6, 2020, ruling that the September 5 judgment

denying the motion to vacate and reconsider was final "despite doing so without prejudice to appellant's right to raise an independent claim for damages."

¶ 24    On November 16, 2021, the appellate court affirmed the judgment denying the second removal petition. The appellate court began its analysis by noting that the issue before it was the same issue ripe for appeal from the 2016 order denying the original removal petition: whether the Apple transaction merited removal of a co-trustee of the 1997 Trust. *In re Estate of Karris*, 2021 IL App (2d) 190865-U, ¶ 34. The appellate court stated:

> "The trial court had already determined in December 2016 that the Apple transaction was improper but did not warrant removal of a co-trustee. Holly appealed from the denial of her original removal petition in January 2017 but chose to dismiss that appeal. Her second removal petition did not present new evidence of wrongdoing but instead relied upon the same Apple transaction and the set terms of the 1997 [T]rust." *Id.* ¶ 37.

¶ 25    The appellate court further stated:

> "We also reject Holly's argument that the original removal petition did not present the same issue because it was not directed at Mary Ann. While Holly had not sought to remove Mary Ann in her original removal petition, she had the opportunity to do so, and the original removal petition alleged that KeyBank agreed to aid Mary Ann in her 'wrongful scheme' to rewrite the 1997 [T]rust." *Id.* ¶ 38.

¶ 26    Accordingly, the appellate court affirmed the denial of the second removal petition and the denial of the motion to vacate and reconsider, finding that the law-of-the-case doctrine precluded Holly from relitigating Mary Ann and KeyBank's removal based on the Apple transaction. *Id.* ¶¶ 29, 40.

¶ 27    On February 27, 2020, Holly filed a 15-count, first amended complaint in the circuit court of Cook County against defendants related to their alleged mismanagement of the 1997 Trust including, but not limited to, the Apple transaction. The counts alleged breach of the trust agreement, fraudulent transfers, dissipation and defunding the trust, breach of fiduciary duty, conversion, fraud, civil conspiracy, tortious interference with an inheritance expectancy, intentional infliction of emotional distress, and loss of consortium. Defendants sought dismissal on collateral estoppel grounds pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), arguing that the claims raised in the first amended complaint already had been litigated and ruled on in the DuPage County circuit court when it considered and rejected the removal petitions. Defendants also sought dismissal under section 2-615 (735 ILCS 5/2-615 (West 2020)). The Cook County circuit court (Judge Brennan) denied the section 2-619 motions, finding that the DuPage County circuit court had not ruled on the damages claims raised in the first amended complaint and, in fact, had specifically stated that its denial of the removal petitions did not preclude Holly's right to pursue damages as a result of the Apple transaction. Judge Brennan granted the section 2-615 motions without prejudice.

¶ 28    Holly filed her 11-count third amended complaint in the circuit court of Cook County on December 10, 2021, against defendants again related to their alleged mismanagement of the 1997 Trust including, but not limited to, the Apple transaction. The counts alleged breach of trust, breach of fiduciary duty, fraud, conversion, and tortious interference with an inheritance expectancy. Holly also sought an accounting and inventory of the financial condition of the 1997 Trust. Defendants moved to dismiss pursuant to section 2-619 on *res judicata* grounds, arguing that the causes of action in the third amended complaint involved the same parties and causes of action as in the DuPage County litigation. Defendants also sought dismissal under section 2-615.

¶ 29    The motions were argued before Judge Snyder. During the hearing, Judge Snyder stated that *res judicata* did not apply because Holly was alleging continuing harm that occurred *after* the rulings made by the DuPage County circuit court. Prior to Judge Snyder's ruling, though, the case was reassigned to Judge Donnelly, who issued a written order on July 19, 2023, granting defendants' section 2-619)(a)(4) motions to dismiss the third amended complaint based on *res judicata*. Judge Donnelly found that the claims in Holly's third amended complaint involved the same causes of action as had been asserted in the removal petitions and litigated to a final judgment in the DuPage County circuit court. Holly now appeals the July 19, 2023, dismissal order.

¶ 30    A section 2-619 motion to dismiss admits the legal sufficiency of the pleading but asserts an affirmative defense or other matter that avoids or defeats the claim. *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011). Section 2-619(a)(4) allows a defendant to file a motion for dismissal on the basis that the cause of action is barred by a prior judgment, *i.e.*, *res judicata*. See *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 719 (2008) (noting that section 2-619(a)(4) incorporates the doctrine of *res judicata*). We review *de novo* a dismissal under section 2-619. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Further, the determination of whether a claim is barred by the doctrine of *res judicata* is a question of law subject to *de novo* review. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43.

¶ 31    The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any later actions between the same parties or their privies on the same cause of action. *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 34. *Res judicata* not only bars what actually was decided in the first action but also any matters that could have been decided. *Id.*

¶ 32     For *res judicata* to apply, three elements must be met: (1) an identity of parties or their privies; (2) a final judgment on the merits rendered by a court of competent jurisdiction; and (3) an identity of cause of action. *Id.* ¶ 36. Illinois law uses the "transactional test" to determine whether two causes of action are identical for the purposes of *res judicata*. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310-11 (1998). Under the transactional test, the court must determine whether the claims arise from the same transaction, *i.e.*, from a single group of operative facts. *Id.* at 311. This depends on a pragmatic consideration of whether the facts are related in time, space, origin, or motivation and form a convenient trial unit. *Trackman v. Michela*, 2019 IL App (2d) 190131, ¶ 15.

¶ 33     Subject to certain exceptions discussed later in this order, *res judicata* precludes a plaintiff from splitting her claims arising from the same transaction into multiple actions. *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). Under the rule against claim-splitting, where a cause of action is entire and indivisible, plaintiff cannot divide it so as to maintain separate lawsuits. *Id*. Thus, plaintiff may not sue for part of a claim in one action and then sue for the remainder in another action. *Id.* at 328-29.

¶ 34     Defendants argue that in the present case, Holly engaged in improper claim-splitting. Defendants contend that the claims in Holly's third amended complaint, which sought damages for defendants' alleged breach of fiduciary duty and fraud relating to the Apple transaction, arose out of the same set of operative facts underlying the removal petitions and, as such, constituted a single cause of action that could not be split apart. In other words, according to defendants, all of Holly's claims in the removal petitions seeking the removal of the co-trustees for their role in the Apple transaction, as well as all of the claims for damages in the third amended complaint arising out of the Apple transaction, constituted a single cause of action that could only be brought in one

lawsuit. Holly's failure to raise the damages claims in her removal petitions filed in DuPage County now prevents her from raising those claims in the subsequently-filed, third amended complaint filed in Cook County.

¶ 35    We disagree with defendants' argument, as an exception to the general rule against claim-splitting applies here. Specifically, our supreme court has adopted the exceptions to the rule against claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments § 26(1) (1982)). See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 472 (2008). The relevant exception provides that the *res judicata* prohibition against claim-splitting does not apply where: "The court in the first action has expressly reserved the plaintiff's right to maintain the second action." Restatement (Second) of Judgments, § 26(1), at 233 (1982).

¶ 36    In the instant case, the DuPage County circuit court expressly stated that its rulings denying the removal petitions were "without prejudice" to Holly's right to pursue her cause of action for damages against defendants related to their conduct in the Apple transaction (Apple-related damages). The Second District appellate court acknowledged that the circuit court's rulings on the removal petitions were made "without prejudice to [Holly's] right to raise an independent claim for damages." The circuit court's express reservation of Holly's right to pursue her damages action placed it squarely within the exception to the application of *res judicata*. Therefore, we find that the rule against claim-splitting does not apply in the instant case to preclude the Apple-related damages claims raised in the third amended complaint.

¶ 37    Defendants argue that a dismissal order "without prejudice" is generally not the equivalent of an express reservation of a right to maintain a second action sufficient to overcome the *res judicata* prohibition against claim-splitting. See *e.g.*, *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 342 (1996). However, in the present case, the DuPage County circuit court did not simply

deny the removal claims "without prejudice," but specifically stated that Holly retained the right to "pursue damages as a result of the Apple [t]ransaction or the unwinding thereof," thereby expressly reserving her right to maintain the second action.

¶ 38    Defendants contend that *res judicata* is an equitable doctrine, and that "equity compels dismissal" of Holly's damages claims in her third amended complaint. Defendants' argument appears to be premised on the mistaken notion that when denying the removal petitions, the DuPage County circuit court found in defendants' favor on all issues related to their conduct in the Apple transaction, such that Holly should not now be allowed to "take a second bite of the Apple transaction" and relitigate their liability therefor. However, as recounted earlier in this order, the court actually found that the Apple transaction was "flawed from the get-go" and that it violated the terms of the 1997 Trust and Karris Sr.'s donative intent. The court further stated that its denial of the removal petitions "was not a blessing of the Apple transaction." Therefore, the court expressly noted that its rulings were "without prejudice" to Holly's right to pursue damages as a result of the Apple transaction or the unwinding thereof. We find nothing inequitable in requiring defendants to litigate, for the first and only time, the issue of whether they are liable for damages resulting from their participation in the Apple transaction.

¶ 39    We further note that many of the claims in the third amended complaint filed in the Cook County circuit court seek damages for conduct occurring *after* the litigation of the removal petitions, *i.e.*, they involve allegedly improper, continuous breaches of fiduciary duties committed after the Apple transaction that have decreased the value of the 1997 Trust from over $300,000,000 in 2016 to less than $150,000,000 to date. Counts IX and XI further seek the appointment of a special fiduciary to take possession and control of the 1997 Trust estate pending resolution of the claims of continuing breaches of fiduciary duties. Defendants argue that *res judicata* precludes the

raising of all these damages claims as well as the claims seeking the appointment of a special fiduciary. We disagree. The rule in Illinois is that "*res judicata* extends only to the facts and conditions as they were at the time a judgment was rendered. When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Northern Illinois Medical Center v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 144 (1985). Also, under *res judicata* principles, "a defendant's continuing course of conduct, even if related to conduct complained of in an earlier action, creates a separate cause of action." *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 222 (1997). Therefore, an earlier judgment relating to a course of conduct "does not bar claims for continuing conduct complained of in the second lawsuit that occur[s] after judgment has been entered in the first lawsuit." *Id.* Applying these principles here, we find that the claims in the third amended complaint seeking damages and the appointment of a special fiduciary due to defendants' continuing course of misconduct vis-à-vis the maintenance of the 1997 Trust are not barred by the earlier judgments rendered by the DuPage County circuit court on the removal petitions.

¶ 40    Defendants also contend that various counts in the third amended complaint failed to state a cause of action pursuant to section 2-615 of the Code and, further, that the fraud claims are barred by the statute of limitations. Defendants additionally contend that the DuPage County circuit court's ruling on the citation petitions acts as a *res judicata* bar to Holly's third amended complaint. The circuit court of Cook County never ruled on any of these issues when dismissing the third amended complaint and therefore we remand for a hearing thereon.

¶ 41    For all the foregoing reasons, we reverse the Cook County circuit court's order dismissing the third amended complaint and remand for further proceedings. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 42    Reversed and remanded.